IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CRITICAL AIR RESPONSE ENTERPRISES, LLC,

     **Plaintiff,**

vs.                                   **Case No. 1:12-cv-356 WDS/ACT**

THE NEW MEXICO DEPARTMENT OF HEALTH,
et al.,

     **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on the Motion to Dismiss by Defendants New Mexico Department of Health, Catherine Torres, Wally Vette, Kyle Thornton, and Charles Schroeder (State Defendants), filed June 1, 2012 [Doc. 17]; Plaintiff's response, filed July 2, 2012 [Doc. 26]; and the State Defendants' reply, filed July 27, 2012 [Doc. 34]. The motion is **GRANTED in part and DENIED in part**. The Court reserves ruling on the State Defendants' motion to dismiss Plaintiff's claim for unconstitutional delegation of authority (Count I).

**I.      BACKGROUND**

Plaintiff Critical Air Response Enterprises, LLC (CARE), an air ambulance service, seeks damages and declaratory relief against the State Defendants and the Commission on the Accreditation of Medical Transport Systems (CAMTS), a private accrediting body. CARE's claims arise from a period of several months in 2011 and 2012 during which CARE was unable to operate in New Mexico because it lost CAMTS accreditation its and state-issued certification to operate an air ambulance service. The State Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

A.      **Allegations in the Complaint**

1.      **Allegations regarding loss of accreditation and loss of certification**

The New Mexico Department of Health (DOH) has promulgated regulations that require an air ambulance service such as CARE[1] to be certified before it may lawfully operate in New Mexico. NMAC § 7.27.5.13.A.  Certification may be either "temporary" or "full."  NMAC § 7.27.5.13.A. To qualify for full certification, an air ambulance service must be accredited by Defendant CAMTS. NMAC § 7.27.5.13.A(3).

DOH initially certified CARE in December 2005 on the basis of CAMTS accreditation. [Doc. 1 (Compl.), ¶¶ 14, 15.]  On or about April 5, 2011, CAMTS informed CARE that CAMTS intended to withdraw CARE's accreditation.  [Compl. ¶ 19.]  In May 2011, CAMTS withdrew CARE's accreditation, allegedly because CARE did not comply with accreditation standards.  [Id., ¶ 20.]  In June 2011, CARE appealed the loss of accreditation to CAMTS and included supporting materials with a description of the actions and remedial measures taken to address the claimed areas of deficiency.  [Id., ¶ 21.]  CAMTS refused to meet with representatives of CARE or allow them to present additional testimony.  [Id., ¶ 22.]

On June 7, 2011, the Emergency Medical Systems Bureau (EMSB), an entity within the DOH, extended CARE's certification through August 31, 2011, pending the outcome of CARE's appeal to CAMTS.  [Compl. ¶ 23.]  On June 23, 2011, CAMTS notified CARE of its decision to deny the appeal on the grounds that CARE was not in substantial compliance with accreditation standards at the time of the site visit for accreditation; the withdrawal of accreditation was to be

---

[1]The Complaint alleges that CARE has at various times operated under the name Air Care 1 International.  [Doc. 1, ¶ 14.]  Neither side claims the distinction is material for purposes of this motion.  Accordingly, the Court will refer to Plaintiff as CARE.

2

effective May 5, 2011.  [Id., ¶ 24.]  On July 22, 2011, CAMTS denied CARE's appeal.  [Id., ¶ 25.]

On or about July 28, 2011, Defendant Charles Schroeder, the Program and Licensing Manger for EMSB, issued a notice of contemplated action (NCA) that stated EMSB's intent to revoke CARE's air ambulance certification on the grounds that CARE had lost its CAMTS accreditation. [Compl. ¶¶ 7, 26.] Defendant Schroeder allegedly made the decision to revoke CARE's certification without affording CARE a hearing.  [Id., ¶ 26.]  On August 8, 2011, CARE appealed the NCA.  [Id., ¶ 27.]  On August 17, 2011, Defendant Schroeder acknowledged receiving CARE's request for a hearing, and at that time rescinded the NCA.  [Id., ¶ 28.]

The extension EMSB granted in June 2011 expired August 31, 2011.  [Compl. ¶ 28.] Defendant Schroeder advised CARE that before it could again be certified in New Mexico, it would have to obtain proof of current accreditation.  [Id.]  Under CAMTS' rules, however, CARE was unable to reapply for accreditation for a period of six months following a withdrawal of accreditation, and CAMTS refused to conduct another inspection before November 14, 2011.  [Id., ¶¶ 29, 48.]  CARE requested CAMTS waive the six-month waiting period, but CAMTS refused. [Id., ¶ 30.]

On September 2, 2011, CARE advised Defendant Wally Vette, the Deputy Secretary of DOH, that it believed it was in full compliance with CAMTS accreditation standards, but that it was subject to a six-month waiting period and the CAMTS review board would not meet until late January 2012.  [Compl. ¶¶ 5, 31.]  CARE provided DOH with a copy of the accreditation it holds from a European accrediting organization and requested DOH reconsider the decision to withdraw certification in light of CAMTS' six-month waiting period.  [Id., ¶ 32.]  DOH did not accept the European accreditation and refused to change its position.  [Id.]  CAMTS conducted an inspection in late January 2012 and afterward agreed to accredit CARE.  [Id., ¶ 48.]

3

During the time that CARE was not accredited, Defendants demanded CARE cease air ambulance operations within the State of New Mexico, and threatened CARE with sanctions or refusal to renew its certification once CAMTS accreditation had been obtained.  [Compl. ¶ 56.] CARE's contracts with its clients were suspended or lost during the time that CARE was not certified.  [Id., ¶ 48.]

### 2.      Allegations regarding denial of temporary certification

On August 26, 2011, Defendant Wally Vette, told CARE's president that CARE could apply for a temporary air ambulance license.  [Compl. ¶ 33.]  CARE submitted an application for temporary certification on September 1, 2011. [Id., ¶ 34.] CAMTS accreditation is not required for temporary certification.  [Id., ¶ 54.]  CARE alleges that it met the requirements for temporary certification, but Defendant Schroeder nevertheless issued a notice of contemplated action on September 20, 2011, indicating EMSB's intent to deny the application. [Id., ¶¶ 49, 50.] Defendant Schroeder allegedly made the decision to deny CARE's application for temporary certification without affording CARE a hearing.  [Id., ¶ 50.]  In denying the application for temporary certification, EMSB allegedly did not conduct an inspection or site visit as required, nor did it apply the criteria set forth in the regulations governing temporary certification.  [Id., ¶¶ 39, 50–52, 55.] The only ground EMSB set forth for denying temporary certification is that CARE lacked CAMTS accreditation.  [Id., ¶ 53.]

### B.      CARE's claims

CARE's complaint asserts four counts based on the above allegations.  Count I is a claim for "Unconstitutional Delegation of Authority."  [Compl. ¶¶ 61–67.]  Count I is based on the claim that a "legislative body may not constitutionally delegate to private parties the power to determine the nature of rights to property in which other individuals have a property interest, without supplying

4

standards to guide the private parties' discretion."  [Id., ¶ 62.]  According to CARE, EMSB's discretion "has been displaced by that of CAMTS...which has become the EMSB for all purposes relative to the accreditation upon which state certification and licensure of air ambulance services are based."  [Id., ¶ 63.]  Count I further alleges that the state's licensing scheme "does not allow an applicant for air ambulance service to either obtain a timely inspection and review with respect to CAMTS accreditation, or in the alternative, to obtain an inspection and certification from the State - so as to avoid the improper delegation of the ultimate responsibility for accreditation to a private, third party entity such as CAMTS."  [Id., ¶ 65.]  CARE seeks damages in connection with Count I. [Id., ¶ 67.]

Count II is a claim for "Violation of Procedural and Substantive Due Process."  [Compl. ¶¶ 68–95.]  Count II is based on CAMTS' alleged refusal to re-inspect CARE for a six-month period. [Id., ¶¶ 70–71.]  CARE also alleges that CAMTS' accreditation appeal process is "an illusory remedy and does not afford an aggrieved party either procedural or substantive due process" because it provides no hearing or other procedural safeguards, and because it did not take into account CARE's corrective actions.  [Id., ¶¶ 72–74.]

Count II further alleges that EMSB's refusal to renew CARE's license upon its expiration on August 31, 2011, violates due process in part because the decision was "automatic and effective upon the loss of [CARE's] CAMTS accreditation."  [Compl. ¶¶ 75–78.]  Count II also alleges that the denial of temporary certification was in contravention of the state's regulations, and that the regulations unconstitutionally deprived CARE of due process.  [Compl. ¶¶ 80, 93.]  CARE seeks a declaration that the regulations are unlawful.  [Compl. ¶¶ 93–94.]

Count III is a claim for "Violation of Procedural and Substantive Due Process (CAMTS)." [Compl. ¶¶ 96–101.]  CARE alleges that CAMTS violated CARE's due process rights and that

5

CAMTS' actions are attributable to the State of New Mexico. [Id., ¶¶ 97–103.] Count IV is a claim for punitive damages against the individual defendants. [Id., ¶¶ 106–08.]

### C.    State Defendants' arguments

The State Defendants move to dismiss the claims against them pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. They argue first that the Complaint should be dismissed because it fails to identify a valid jurisdictional basis as required by Rule 8(a)(1). Second, they argue that the individual defendants—who are sued only in their individual capacities—are entitled to qualified immunity. Third, they argue that the DOH is not subject to suit under 42 U.S.C. § 1983. Fourth, they argue that the Complaint fails to state a claim for violation of procedural or substantive due process. Fifth, they argue that CARE's claim for unconstitutional delegation should be dismissed because it does not raise a federal question, and alternatively, that it does not state a claim for relief.

## II.    ANALYSIS

### A.    Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The nature and specificity of the allegations required to state a plausible claim sufficient to survive a motion to dismiss "vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). In the context of a § 1983 claim against individual government actors,

6

"it is particularly important...that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original) (citing *Twombly*, 550 U.S. 544, 127 S.Ct. at 1970–71 n.10). Dismissal is appropriate where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

**B.     The Complaint states a jurisdictional basis**.

The Court first addresses the State Defendants' argument that the Complaint should be dismissed because it does not comply with Rule 8's directive that a pleading contain "a short and plain statement of the grounds for the court's jurisdiction." Fed.R.Civ.P. 8(a)(1). The State Defendants argue the Complaint is deficient because it states only that it is brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201 (the Declaratory Judgment Act), neither of which, they claim, establish jurisdiction in the federal courts.

The Complaint states that CARE is seeking damages and other relief for alleged violations of due process rights guaranteed by the United States Constitution. [Compl. ¶ 1.] While it is true that the Complaint does not cite 28 U.S.C. § 1331 (the federal question statute), it is sufficiently clear that CARE is intending to plead violations of the United States Constitution, thereby invoking federal question jurisdiction. Accordingly, the Court does not agree the Complaint fails to identify a valid jurisdictional basis.

**C.     Qualified immunity of individual defendants**

The four individual defendants assert qualified immunity. When a defendant asserts qualified immunity, the plaintiff bears a heavy two-part burden of showing, on the facts alleged, that (1) the defendants' actions violated a constitutional or statutory right, and (2) the right was clearly

7

established at the time of the allegedly unlawful conduct at issue.  *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).

### 1.    Procedural due process claims

CARE claims the "temporary suspension" of its license was accomplished in a manner that did not afford procedural due process.  The Fourteenth Amendment protects citizens from the deprivation of "life, liberty, or property, without due process of law...."  U.S. Const. amend. XIV, § 1.  "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry:  (1) did the individual possess a protected property interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."  *Hatfield v. Bd. of County Comm'rs for Converse County*, 52 F.3d 858, 862 (10th Cir. 1995) (quotation marks and citations omitted).

### a.    CARE had a protected property interest in its state-issued certification to operate an air ambulance service.

The individual defendants argue the complaint fails to allege a constitutional violation because it does not identify a protected property interest.  "[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest."  *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) (citations, quotation marks, and footnote omitted).  The Court concludes CARE had a protected property interest in its state-issued certification to operate an air ambulance service in New Mexico.

The Constitution does not create property interests; rather, they are "defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972).  New Mexico regulations

define the grounds upon which air ambulance certification may be denied, suspended, or revoked. NMAC § 7.27.5.15.C.  These grounds include misrepresentation in the application process, failure to maintain CAMTS accreditation, negligence in the delivery of air ambulance services, loss of Federal Aviation Administration certification, operating without certification, and failure to cooperate in an investigation.  NMAC § 7.27.5.15.C (1)–(4), (7), (9).  By defining the grounds upon which certification may be withdrawn, New Mexico engenders a clear expectation—or legitimate claim of entitlement—to continued enjoyment of air ambulance certification absent one of the specified contingencies.  *See Barry v. Barchi*, 443 U.S. 55, 64 & n.11 (1979); *see also Hennigh v. City of Shawnee*, 155 F.3d 1249, 1254 (10th Cir. 1998) (procedural detail may be relevant to determining the existence of a property interest).

Furthermore, "[t]he Supreme Court has held that a license to practice one's calling or profession is a protected property right."  *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149–50 (10th Cir. 2001) (citing *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586 (1971)).  "Once licenses are issued...their continued possession may become essential in the pursuit of a livelihood."  *Bell*, 402 U.S. at 539 (holding that once licenses are issued, they are not to be taken away without procedural due process).  Because certification is required and enables CARE to operate an air ambulance service in New Mexico, CARE had a protected property right in the state-issued certification it held based on CAMTS accreditation.

The State Defendants argue that CARE cannot have a protected property interest because in New Mexico, a license is a privilege not a right.  They cite state court cases which hold that drivers licenses and licenses to participate in horse racing are not protected property interests.  *See, e.g.*, *Sanderson v. New Mexico Racing Comm'n*, 453 P.2d 370, 372 (N.M. 1969); *Johnson v. Sanchez*, 351 P.2d 449, 542 (N.M. 1960).

9

The Supreme Court has long since "fully and finally rejected the wooden distinction between 'rights' and 'privileges' that once seemed to govern the applicability of procedural due process rights." *Roth*, 508 U.S. at 571 & n.9. Thus, the constitutional challenge can no longer "be answered by an argument that [the benefit is] a 'privilege' and not a 'right.'" *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (citation and quotation marks omitted). The one federal case the State Defendants cite, *Jorgenson v. Larsen*, does not hold otherwise. In *Jorgenson*, the question was whether plaintiff had a property interest in the use of her maiden name as opposed to her married name on her driver's license; it did not involve the loss of a license, as in this case. *Jorgenson v. Larsen*, 1991 WL 55457, *3 (10th Cir. Apr. 12, 1991) (unpublished table opinion) (holding that plaintiff could cite to no state law creating a right to use a particular name on her Utah driver's license). To the extent the Tenth Circuit stated that a Utah driver's license is a privilege not a right, it did so in connection with the plaintiff's equal protection claim, not her due process claim. *Jorgenson*, 1991 WL 55457 at *4.

The State Defendants also argue that CARE cannot assert a property interest in a license CARE admits merely expired. CARE responds that the technical expiration of the license does not vitiate its due process claim because Defendants used the expiration to cut off efforts to defend the license, and that were it not for the loss of accreditation, recertification would have been a mere formality.

For purposes of this motion, the Court does not accept Defendants' characterization that CARE is attempting to assert a property interest in an expired license. The Complaint alleges that after CAMTS signaled its intent to withdraw accreditation, EMSB extended CARE's certification pending the outcome of CARE's appeal of CAMTS' decision. [Compl. ¶ 23.] It is not clear what the status of CARE's certification would have been absent the extension. The well-plead facts, however, are sufficient to plausibly suggest that CARE's inability to operate in New Mexico after

10

August 31, 2011, was the result of the withdrawal of accreditation, and not merely expiration of its "provisional, temporary certification" as Defendants describe it [Doc. 17 at 10]. If so, the extension merely postponed the loss of certification CARE alleges inevitably and automatically follows a loss of accreditation.

> **b.    The Complaint states a procedural due process claim against Schroeder, but not against Torres, Vette, or Thornton.**

Identification of a protected property interest does not end the inquiry. CARE also must identify the actions of each of the individual defendants that violated the right. *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010) (citing *Hope v. Pelzer*, 536 U.S. 730, 751 n.9 (2002)); *see also Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000) (when qualified immunity is raised on a 12(b)(6) motion, the plaintiff must identify a clearly established statutory or constitutional right of which a reasonable person would have known, and then allege facts to show the defendant's conduct violated that right). Here, the Complaint fails as to all but one of the four individual defendants.

Defendant Catherine Torres, M.D. is alleged to be the Secretary of the DOH. [Compl. ¶ 4.] CARE alleges she "ratified, condoned, authorized and otherwise approved the actions, or failures to act, of their subordinate officers named herein, and they are liable therefor." [Id., ¶ 60.] These allegations are too general to nudge the claim against Torres across the line from conceivable to plausible. Mere labels and conclusions such as these are not sufficient to withstand a motion to dismiss. *See Twombly*, 550 U.S. at 555. Furthermore, Defendant Torres cannot be held liable merely because she is a supervisor. *See Brown v. Montoya*, 662 F.3d 1152, 1163–64 (10th Cir. 2011). Aside from collective allegations [Compl. ¶¶ 56–59] and legal conclusions [Id., ¶¶ 89, 91, 92] which the Court disregards, the Complaint fails to allege any actual conduct by Defendant

Torres that is sufficient to state a claim against her. Defendant Torres is therefore entitled to qualified immunity against CARE's procedural due process claim.

The Complaint fails to state a claim against Defendant Wally Vette for the same reasons, and he is therefore also entitled to qualified immunity. Defendant Vette is alleged to be the Deputy Secretary of the DOH. [Compl. ¶ 5.] Like Defendant Torres, Vette cannot be held liable merely because he is a supervisor, or on the basis of collective allegations, labels, or legal conclusions. [Id., ¶¶ 56–59, 67.] Defendant Vette allegedly advised CARE that it could apply for temporary certification, advice that CARE followed. [Id., ¶¶ 33, 34, 80.] Though the Court accepts this allegation as true for purposes of this motion, merely advising CARE that it could apply for temporary certification did not deprive CARE of a property interest.

The allegations against Defendant Kyle Thornton are even more thin. Defendant Thornton is alleged to be the Bureau Chief of EMSB. [Compl. ¶ 6.] CARE makes the same collective allegations and asserts the same legal conclusions against him as against Torres and Vette. [Id., ¶¶ 56–60, 90, 91.] The allegations are inadequate to state a claim against Defendant Thornton and he is entitled to qualified immunity.

The Court reaches a different conclusion with respect to Defendant Charles Schroeder. Defendant Schroeder is alleged to be the Program and Licensing Manager for the EMSB. [Compl. ¶ 7.] According to the Complaint, Defendant Schroder gave notice of EMSB's intention to revoke CARE's air ambulance certification, and he made the decision to do so without affording CARE an opportunity for a hearing. [Id., ¶ 26.] Defendant Schroeder also allegedly received CARE's request for a hearing and then rescinded the NCA, allowing the extension to expire instead. [Id., ¶ 28.] Taken as true, these allegations show Defendant Schroeder's direct involvement in the deprivation of a protected property interest, allegedly without affording due process, and the allegations

12

therefore are sufficient to state a plausible claim for a procedural due process violation.

Defendants argue that a hearing procedure was not required prior to expiration of the license. [Doc. 17 at 11.] However, given the Court's conclusion that CARE had a protected property interest in its state-issued certification, that interest could not be neutralized merely by interposing an extension that expired before CARE had an opportunity to avail itself of procedural safeguards. On a motion to dismiss, the Court must accept the well plead, plausible allegations that Schroeder circumvented the appeal process and its procedural safeguards by withdrawing the notice of contemplated action and allowing the extension to expire instead.

Defendants also argue that CARE did not suffer a due process violation because the opportunity to appeal the loss of CAMTS accreditation was sufficient to satisfy due process. [Doc. 17 at 11.] Defendants' argument that the CAMTS appeal process is an adequate safeguard against erroneous license deprivations suggests that loss of accreditation—not expiration—was indeed the determining factor in the loss of certification. Regardless, the adequacy of CAMTS' appeal process is not before the Court and the Court expresses no opinion regarding it. And without adequate briefing on the subject, the Court declines to hold that the State may delegate its due process obligations to a private accrediting entity. For purposes of this motion, the Court accepts as true the allegation that after CAMTS' final decision to withdraw accreditation, CARE attempted to separately invoke its due process rights for the loss of certification, and that Defendant Schroeder made the decision not to afford a hearing procedure. [Compl., ¶¶ 26–27.] The Complaint states a procedural due process claim against Defendant Schroeder.

       c.    **CARE's constitutional right to due process before removal of its state-issued license was clearly established**.

Having concluded that CARE has alleged a constitutional violation by Defendant Schroeder,

the Court now must consider whether the right was clearly established so as to overcome Schroeder's qualified immunity defense.  Inquiring into whether a right was clearly established is a case-specific inquiry that asks whether a reasonable official would recognize that his conduct was unlawful in the situation.  *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Cordova v. Aragon*, 569 F.3d 1183, 1192 (10th Cir. 2009) (citations and quotation marks omitted).  However, "if the text of a [state] statute clearly establishes the contours of a right, the statute alone is sufficient to put an objectively reasonable official on notice that conduct within the plain text of the statute violates that right for purposes of qualified immunity."  *Robbins v. Wilkie*, 433 F.3d 755, 771 (10th Cir.2006), *rev'd on other grounds*, *Wilkie v. Robbins*, 551 U.S. 537, 127 S.Ct. 2588 (2007).

It has been clearly established for many years that once issued, a license whose continued possession is essential in the pursuit of a livelihood may not be taken away without procedural due process required by the Fourteenth Amendment.  *Bell*, 402 U.S. at 539; *see also Barry*, 443 U.S. at 69–70 (Brennan, J., concurring) ( "What was said of automobile drivers' licenses in *Bell v. Burson* ... is even more true of occupational licenses.").  Furthermore, DOH regulations provide a right to appeal that includes detailed procedures for discovery, a hearing before a hearing officer, a written report and recommendation by the hearing officer, and a determination by the Secretary.  NMAC §§ 7.27.5.15.E–M.  Although detailed procedural regulations do not themselves create a property interest, they are sufficient in this case to put an objectively reasonable official on notice that air ambulance certification may not be removed without procedural safeguards.

Defendants do not contend that the law is not clearly established; they instead argue that

CARE's license expired.  As discussed above, however, the Complaint plausibly alleges CARE's certification was allowed to "expire" because CAMTS withdrew accreditation; in essence, certification was essentially revoked or not renewed as a result of the loss of accreditation. Accordingly, the Court concludes Defendant Schroeder is not entitled to qualified immunity on CARE's claim that the loss of its state-issued certification violated procedural due process.

> **d.    Defendants are entitled to qualified immunity on CARE's claims that the failure to grant a waiver, the denial of temporary certification, and the failure to follow procedures violated procedural due process.**

The individual Defendants are entitled to qualified immunity to the extent CARE claims their failure to grant a waiver of the alleged "six month inspection requirement" constitutes a due process violation.  CARE has pointed to no law or statute that gives rise to a legitimate claim of entitlement to a waiver, and has thus failed to show that it had a property interest in a waiver.

The Court also concludes that CARE has not overcome the individual Defendants' qualified immunity defenses with respect to the denial of CARE's application for temporary certification. First, CARE has not demonstrated that it had a protected property interest in temporary certification. CARE's argument appears to assume that because it had a property interest in the certification that had been issued, it also had a protected property interest in the temporary certification that had not yet been issued.  As a general matter, however, the Fourteenth Amendment protects those interests that are "already acquired."  *Roth*, 408 U.S. at 576.  CARE had not already acquired temporary certification, but was merely an applicant.

Merely because CARE had a property interest in the certification it held as a CAMTS-accredited air ambulance service does not mean it also had a property interest as an applicant for temporary, or non-CAMTS accredited, certification.  Under the regulatory scheme, certification

based on CAMTS accreditation is distinct from temporary certification for air ambulance services that are not accredited; the two paths to certification entail separate application processes, requirements, requirements, and terms.  NMAC §§ 7.27.5.13.A(2),(3), 7.27.5.13.B–C.

Second, even if the Court were to assume CARE had a property interest in acquiring temporary certification because it satisfied the regulatory requirements as a non-CAMTS accredited service, CARE has failed to meet the second prong of the qualified immunity analysis:  that the right was clearly established.  *Stidham*, which CARE cites, clearly establishes that "once issued" licenses and permits may warrant constitutional protection before they are removed, revoked, or effectively revoked.  *Stidham*, 265 F.3d at 1150, 1152.  *Stidham* does not clearly establish that an applicant has a protected property interest in a potential license.  In other words, from *Stidham* it would not have been clear to a reasonable officer that an applicant has a property right in a license that it has applied for, but not yet been granted.  *Bell v. Burson* likewise deals with the suspension of an existing license, not denial of an application for a license.  *Bell*, 402 U.S. 535 (holding that a traveling minister's license to drive automobiles could not be suspended without procedural due process).  CARE has cited no other case that clearly establishes the right it asserts, and the Court therefore concludes it has not met its burden with regard to temporary certification.

The Complaint also fails to state a procedural due process claim to the extent it alleges the Defendants did not follow the temporary certification procedures.  [Compl. ¶¶ 39, 51 (EMSB refused to conduct an inspection); ¶ 50 (Schroeder failed to afford a hearing before denying application for temporary certification); ¶¶ 52–53 (EMSB failed to adhere to regulations).]  Process is not an end in itself and thus an entitlement to nothing but procedure cannot serve as the basis for a property right protected by the Due Process Clause.  *Teigen*, 511 F.3d at 1081; *see also Bunger v. Univ. of Okla. Bd. of Regents*, 95 F.3d 987, 990–91 (10th Cir. 1996) (promise to follow certain

procedural steps does not beget a property interest).

> **2.      The individual Defendants are entitled to qualified immunity on CARE's substantive due process claims**.

CARE argues the facts alleged also support a substantive due process claim.  The Court disagrees.

While procedural due process ensures the state will not deprive a party of property without engaging in fair procedures, substantive due process ensures the state will not deprive a party of property for an arbitrary reason.  *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1198 (10th Cir. 2000).  However, "the due process clause is not a guarantee against incorrect or ill-advised government decisions."  *Camulia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006). An arbitrary deprivation of an individual's property right can violate the substantive component of the Due Process Clause, but the arbitrariness must be extreme.  *Camuglia*, 448 F.3d at 1222.  "[T]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995).  The high degree of outrageousness required reflects "the need to restrict the scope of substantive due process claims, the concern that § 1983 not replace state tort law, and the need to give deference to local policymaking bodies' decisions related to public safety."  *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 513 (10th Cir. 2011) (citation omitted).  As with a procedural due process claim, a protected property interest is required for a substantive due process claim.  *Teigen*, 511 F.3d at 1078.

The Complaint fails both prongs of the qualified immunity analysis with respect to substantive due process claims.  First, it does not state a claim for violation of substantive due process against the individual defendants.  Although CARE had a protected property interest in its certification as a CAMTS-accredited service, the Complaint contains little in the way of factual

matter with regard to the conduct of the individual defendants.  The allegations against Torres and Thornton in particular are lacking any degree of specificity and are wholly inadequate for the Court to conclude their conduct was outrageous.  The Complaint alleges Defendant Vette suggested CARE apply for a temporary license, but this conduct also is not outrageous, and moreover, relates to the temporary license in which CARE did not have a protected property interest.  The specific allegations against Defendant Schroeder—that he made the decision to rescind the Notice of Contemplated Action without affording a hearing—are sufficient for a procedural due process claim, but fall far short of the degree of conscience-shocking behavior necessary to establish a substantive due process violation.

Second, CARE has cited no Supreme Court or Tenth Circuit precedent clearly establishing that suspension of a license to do business for a period of six months is conduct rising to the level of a substantive due process violation.  CARE cites *Whitley v. Albers*, but that case primarily involves the Eighth Amendment right to be free from cruel and unusual punishment; it has no application to this case.  *See Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078 (1986).

*Schware v. Board of Bar Examiners* also does not clearly establish the right at issue here. In *Schware*, the Supreme Court held that any qualification imposed by a state before admitting an individual to its bar must have a "rational connection" with the applicant's fitness or capacity to practice law.  *Schware v. Bd. of Bar Examiners*, 353 U.S. 232, 239, 77 S.Ct. 752, 756 (1957). *Schware* is inapplicable here:  CARE does not claim the accreditation requirement is arbitrary or that CAMTS accreditation is not rationally related to a company's fitness to operate an air ambulance service.

**D.      DOH is immune from claims for monetary damages under § 1983**

The State Defendants argue that DOH is not a "person" for purposes of § 1983.  The Court

agrees.  Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

28 U.S.C. § 1983.  "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties [unless the State has waived its Eleventh Amendment immunity]."  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309–10 (1989).

The Complaint alleges that DOH is "an agency of the State of New Mexico."  [Compl. ¶ 3.] The State Defendants assert that DOH is an arm of the state that is entitled to the same immunity as the state.  [Doc. 17 at 7.]  Whether a particular state agency is an arm of the state and therefore partakes of Eleventh Amendment immunity is a question of federal law determined by (1) the degree of autonomy given to the agency and the degree of control exercised by the state and (2) the extent of financing the agency receives independent of the state treasury.  *V-1 Oil Co. Utah State Dept. of Pub. Safety*, 131 F.3d 1415, 1420 n.1 (10th Cir. 1997).

The parties have not briefed the issue of whether DOH is an arm of the state for immunity purposes.  However, in its response CARE appears to have abandoned any argument that the DOH can be held liable under § 1983 for monetary damages, arguing that only its claims for declaratory relief are not subject to immunity defenses.  Accordingly, the Court concludes that claims for monetary damages against DOH must be dismissed.

### E.     The Court defers ruling on Defendants' motion to dismiss CARE's claim for unconstitutional delegation.

In Count I, CARE challenges the extent to which EMSB has allegedly delegated to CAMTS

unsupervised authority to set and administer accreditation standards.  [Compl. ¶ 64.]  CARE also challenges EMSB's licensing scheme which CARE claims "does not allow an applicant for air ambulance service to either obtain a timely inspection and review with respect to CAMTS accreditation, or in the alternative, to obtain an inspection and certification from the State[.]"  [Id., ¶ 65.]

The State Defendants move to dismiss CARE's claim for unconstitutional delegation of authority on the grounds that it does not raise a federal question, and alternatively, fails to state a claim.  The Court defers a ruling on the motion to dismiss Count I pending a response, if any, to the Order to Show Cause, issued contemporaneously with this opinion.

**IT IS HEREBY ORDERED** the motion to dismiss the procedural due process claims on the grounds of qualified immunity is **DENIED** as to Defendant Charles Schroeder with respect to the loss of Plaintiff's CAMTS accreditation-based certification, and **GRANTED** as to Defendants Catherine Torres, Wally Vette, and Kyle Thornton;

**IT IS FURTHER ORDERED** the motion to dismiss Plaintiff's procedural due process claims on the grounds of qualified immunity is **GRANTED** as to all individual defendants with respect to denial of a six-month waiver, denial of the application for temporary certification, and failure to follow regulatory procedures;

**IT IS FURTHER ORDERED** the motion to dismiss Plaintiff's substantive due process claims on the grounds of qualified immunity is **GRANTED**;

**IT IS FURTHER ORDERED** the motion to dismiss Plaintiff's section 1983 claim for monetary damages against the New Mexico Department of Health is **GRANTED**.

**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**

20